# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **JOE ALLEN**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 C 2285 |
| | ) | |
| **VILLAGE OF WESTMONT, ILLINOIS,** | ) | |
| **WESTMONT POLICE OFFICERS** | ) | |
| **DOUGLAS MANTOOTH, Star No. 128,** | ) | |
| **ROLAND PADILLA, Star No. 100,** | ) | |
| **JOHN MAJESKI, Star No. 101,** | ) | |
| **GREGORY COMPTON, Star No. 114,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

New defense counsel has entered the fray in this 42 U.S.C. 1983 ("Section 1983") action brought by plaintiff Joseph Allen ("Allen") against the Village of Westmont (the "Village") and four of its police officers (one of whom had left the Village's employ after the events on which Allen sues). New counsel replaced the original trial counsel some weeks after the jury had returned a $150,000 verdict for compensatory damages (an amount stipulated to be borne by the Village) and a $50,000 punitive damages verdict against each of the four officers. When the new counsel then appeared to seek leave to file an oversized brief in support of their motion for a new trial under Fed. R. Civ. P. ("Rule") 59(a), this Court -- which of course had lived through the trial as the new counsel had not -- made a brief jocular reference to the nature of some new trial motions as comparable to Judge William Bauer's description of the role of his court (our Court of Appeals) as "coming onto the scene after the battle is over and shooting the wounded."

This Court has now had the opportunity to review the bulky motion, and it finds that reference to Judge Bauer's aphorism to have been not only extraordinarily apt but also an

understatement in relation to new counsel's major thrust.  No comment is made at this time on the new counsel's efforts to attack various aspects of either (1) the trial conduct of Allen's lawyers or (2) this Court's handling of the trial[1] -- those matters can await ruling until the Rule 59(a) motion is fully briefed.[2]  Instead this opinion targets the surprising failure of defendants' new lawyers to do the most basic homework on the proper scope and nature of a motion for new trial.

In that respect new defense counsel have targeted a substantial number of serious claimed deficiencies on the part of their predecessors in representing their clients, the defendants, in the course of the trial as somehow justifying -- even compelling -- the entry of an order for a new trial.  That notion of effectively punishing the victorious plaintiff for the asserted sins of the losing parties' lawyers is not just counterintuitive -- it understandably (and immediately) brought to this Court's mind its recollection of the succinct statement in Justice Harlan's opinion in Link v. Wabash R.R., 370 U.S. 626, 633-34, (1962):

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent ....

That brief statement, well recalled by this Court despite its age, was made in the context of a client's efforts to distance himself from what his chosen lawyer had done, but our Court of

_____

[1] But see Appendix.

[2] At the presentment date of the motion for an oversized brief, the new lead defense counsel requested that this Court participate in a conference with him and Allen's counsel seeking to settle the case, and Allen's counsel joined in that request.  This Court expressed some reservations on that score but ended by agreeing to accede to both sides' request.  That was before this Court received and had the opportunity to review the Rule 59(a) submission and consequently to issue this opinion -- something that may perhaps require fresh thought.

Appeals has had more than one occasion to flat-out reject the contention advanced by the post-trial newcomers in this case -- here, quoted in full except for the particulars of the asserted deficiencies adverted to in that case, is our Court of Appeals' ruling in Stanciel v. Gramley, 267 F.3d 575, 581 (7th Cir. 2001):

> Although we do not challenge Stanciel's assertion that his attorney's performance was deficient in several respects -- [details omitted] -- we cannot accept his argument that retrial is a proper remedy for defective representation in a civil action. Our cases make it quite clear that there is no Sixth Amendment right to effective assistance of counsel in a civil case. See Bell v. Eastman Kodak Co., 214 F.3d 798, 802 (7th Cir. 2000) (finding that ineffective assistance of counsel is not proper grounds for collaterally attacking a civil judgment); Hutcherson v. Smith, 908 F.2d 243, 245 (7th Cir. 1990) ("[I]t is a well-established principle of law that there is, in general, no constitutional or statutory right to effective assistance of counsel in civil cases."). The proper remedy for inadequate representation in a civil case lies not in dragging the opposing party through another trial, but rather in a malpractice action against the offending attorney. See Pokuta v. Trans World Airlines Inc., 191 F.3d 834, 840 (7th Cir. 1999); Bell, 214 F.3d at 802. Although it is certainly unfortunate that Stanciel's trial attorney failed to provide vigorous representation of his client, it is well established that an attorney's shortcomings do not entitle his client to a new trial in a civil case.

More recently, here is our Court of Appeals' unpublished order in Berg v. Culhane, 443 Fed.App'x. 221, 222 (7th Cir. 2011), which cites and quotes Stanciel and some of the earlier Seventh Circuit cases that Stanciel had invoked:

> This court, however, has repeatedly rejected the "argument that retrial is a proper remedy for defective representation in a civil action." Stanciel v. Gramley, 267 F.3d 575, 581 (7th Cir. 2001). "Our cases make it quite clear that there is no Sixth Amendment right to effective assistance of counsel in a civil case." Id. (citing Bell v. Eastman Kodak Co., 214 F.3d 798, 802 (7th Cir. 2000) (finding that ineffective assistance of counsel is not proper grounds for collaterally attacking a civil judgment)); see also Hutcherson v. Smith, 908 F.2d 243, 245 (7th Cir. 1990) ("[I]t is a well-established principle of law that there is, in general, no constitutional or statutory right to effective assistance of counsel in civil cases."). "The proper remedy for inadequate representation in a civil case lies not in dragging the opposing party through another trial, but rather in a malpractice action against the offending attorney." Stanciel, 267 F.3d at 581 (citing Pokuta v. Trans World Airlines Inc., 191 F.3d 834, 840 (7th Cir. 1999)).

What is additionally noteworthy about the Berg case is the panel's response to the effort by opposing counsel to call on Fed. R. App. P. 38 as the basis for imposing sanctions on the new appellate counsel (the counterpart of the movant in this case) for having made the same argument about her predecessor that the new counsel has advanced here. Here is what the panel in Berg said on that score (id. at 223):

> While appellate counsel is "skating near the edge of [her] pond," Ross v. RJM Acquisitions Funding LLC, 480 F.3d 493, 499 (7th Cir. 2007), we find no evidence of bad faith or an intent to delay or harass the defendants, and decline in this case to impose monetary sanctions. However, we admonish counsel for appellant, Lori S. Klingman, that the claims raised on appeal do not meet our standards for presenting and developing non-frivolous arguments, and we warn her against bringing such claims in the future.

Lest it be thought that our Court of Appeals is an outlier in this area, this Court's able law clerk has found that the cases from other Courts of Appeals dealing with the same question have universally taken the same view. Here is a brief list of such cases, set out in the sequence of the Circuit numbers rather than chronologically:

1. In the Third Circuit, here is Robinson v. Johnson, 449 Fed. App'x 205, 207 (3d Cir. 2011):

> Unlike a criminal defendant, a civil litigant does not have a constitutional right to effective assistance of counsel. Kushner v. Winterthur Swiss Ins. Co., 620 F.2d 404, 408 (3d Cir. 1980). The proper remedy for defective representation in a civil action is not a new trial but a malpractice action against the offending attorney. Stanciel v Gramley, 267 F.3d 575, 581 (7th Cir. 2001); Kushner, 620 F.2d at 408. Robinson's dissatisfaction with counsel's representation does not provide a basis for a new trial.

2. Here is the Fifth Circuit's per curiam opinion in Sanchez v, United States Postal Serv., 785 F.2d 1236, 1237 (5th Cir. 1986) (citations to cases from the 7th, 8th and 11th Circuits omitted):

- 4 -

In case any doubt still exists, we now expressly hold that the sixth amendment
right to effective assistance of counsel does not apply to civil litigation. Since no
right to effective assistance of counsel exists, we need not consider the alleged
errors committed by Sanchez' attorney. If Sanchez' attorney did mishandle the
case, Sanchez may have a remedy against his attorney in the form of a
malpractice suit.

3. Allen v. Barnes Hosp., 721 F.2d 643, 644 (8th Cir. 1983) (per curiam) (citations

and references to factors not relevant here omitted) voiced the same proposition as to a court-

appointed lawyer with whom the client was dissatisfied:

Allen's second argument is that her court-appointed attorney was ineffective. . . .
Third, the stringent standards of the sixth amendment do not apply to civil
proceedings. Watson v. Moss, 619 F.2d 775, 776 (8th Cir. 1980). Allen had no
right to a court-appointed attorney, and it follows that she is not entitled to a new
trial, any more than a litigant with retained counsel, in the event of attorney
incompetence.

4. Another per curiam opinion, this one from the Ninth Circuit in Nicholson v.

Rushen, 767 F.2d 1426, 1428 (9th Cir. 1985), also stated the same rule.

5. MacCuish v. United States, 844F.2d 733, 735, 736 (10th Cir. 1988) set out an

extended treatment to the identical effect, quoting in the course of that treatment an earlier 10th

Circuit case as well as a battery of the same or similar cases from the 3rd, 5th, 7th and 8th and

11th Circuits.

6. Finally, here is the Eleventh Circuit's opinion in Mekdeci v. Merrell Nat'l Labs.,

711 F.2d 1510, 1528 (11th Cir. 1983):

The sixth amendment standards for effective counsel in criminal cases do not
apply in the civil context. White, 589 F.2d at 1285 n. 4; Rogers, 435 F.2d at
1135; Watson, 619 F.2d at 776; for that reason, "[a] party . . . does not have any
right to a new trial in a civil suit because of inadequate counsel, but has as its
remedy a suit against the attorney for malpractice." Watson, 619 F.2d at 776; see
also Kushner, 620 F.2d at 408.

In sum, our Court of Appeals has consistently confirmed and reconfirmed the proposition that misconduct on the part of a losing party's trial counsel will not support a Rule 59 motion by anyone -- that lawyer, the client or a successor counsel -- for a new trial. Instead the client's remedy (if any) is a suit for malpractice against trial counsel. And that same doctrine has been adopted and applied across the board by every other Court of Appeals that a search by its law clerk found to have considered the problem -- other courts that frequently draw upon the Seventh Circuit caselaw to support their principled agreement. Yet the motion now under consideration can be searched in vain for even a whisper regarding that fundamental principle. Instead the motion seeks to draw upon criminal cases that hinge on deficiencies in lawyer representation, ignoring the fact that the half-century-old <u>Gideon v. Wainwright</u> rule confirming the right of criminal defendants to representation by competent counsel has never been extended -- by some sort of quantum leap -- to civil litigants.

So it is beyond dispute that at least one major structure on which the new defense counsel seeks to erect its motion for new trial has no legal foundation at all. And on that score, it will be recalled that our Court of Appeals in <u>Berg v. Culhane</u> found that a similar effort by the appellate lawyer in that case was legally frivolous. Meanwhile that, like all other issues posed by the action, will await the completion of briefing on those issues.

                         _____
                         Milton I. Shadur
                         Senior United States District Judge

Date: March 10, 2015

Appendix

As stated in the text at n.1 in this opinion, this Court has deliberately deferred for another day any meaningful consideration of the purported grounds for Rule 59(a) relief predicated on the trial activity of Allen's counsel or of this Court itself. But that deferral must not be misunderstood as any endorsement of the new defense counsel's positions in those areas, for the motion itself leaves much to be desired in a number of respects -- matters that will be dealt with as and when the briefing on the motion is completed.

Just by way of example, apart from the fact that Allen's counsel wrongfully (and repeatedly) referred to the police incident report prepared by defendant Mantooth as containing perjury when the report was not sworn to (an error that this Court could and would have corrected, of course, if defendants' trial counsel had objected so as to call it to this Court's attention), defendants' new counsel have distorted the issues by incorrectly labeling a great deal of trial interrogation by Allen's lawyers as improper "impeachment" (Motion at 7-12). Thus, for instance,[1] Allen's counsel came into the trial armed with (1) Officer Mantooth's statement included in his incident report that a fellow officer <u>had</u> told him "A" (a material fact about the encounter with Allen) and (2) sworn deposition testimony by that fellow officer that he had <u>not</u> told Mantooth "A." That was not a mere difference of "perception," as the original defense counsel sought to argue at trial, or a mere difference in recollection -- instead each officer made his statement unequivocally. Although Allen's counsel's inquiry of each officer during his trial testimony about his earlier version may not have been the most common garden-variety type of

---

[1] This should not of course be viewed as an exhaustive treatment of the issue of proper impeachment vel non -- it is merely exemplary. Nor should the omission of any discussion in this Appendix of problematic aspects of the conduct of plaintiff's counsel be mistaken as an endorsement of that counsel's conduct -- also a subject to be dealt with as and when further briefing is ordered.

impeachment,[2] it plainly served the impeachment goal:  It demonstrated to the jury, as an aid to its role in evaluating witness credibility, that the testimony of one of the two officers amounted to lying under oath at trial.

As for this Court's handling of the case, it will deal in the future with its efforts to keep the trial under control by curbing the blatant evasiveness and other obstructive tactics engaged in by the defendant officers during their testimony.  Those entirely proper efforts must not be distorted into an asserted exhibition of bias on the part of this Court.  As stated in the opinion, defendants' new counsel did not live through the trial, while this Court did.  Any reasoned response to the new counsel's contentions calls for a reading of the transcript more extensively and responsibly than is reflected by the movant's submission.

---

[2] For example, if either officer's trial testimony had contradicted his own earlier version, that earlier version could have been brought before the jury as the most conventional form of impeachment.